J-S13002-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE:  ADOPTION OF E.I.M., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF:  A.L.H., MOTHER | No. 3071 EDA 2016 |

Appeal from the Decree Entered September 6, 2016
In the Court of Common Pleas of Montgomery County
Orphans' Court at No(s): 2016-A052

| | |
|---|---|
| IN RE:  ADOPTION OF N.J.M., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF:  A.L.H., MOTHER | No. 3072 EDA 2016 |

Appeal from the Decree Entered September 6, 2016
In the Court of Common Pleas of Montgomery County
Orphans' Court at No(s): 2016-A053

| | |
|---|---|
| IN RE:  ADOPTION OF L.C.M., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF:  A.L.H., MOTHER | No. 3073 EDA 2016 |

Appeal from the Decree Entered September 6, 2016
In the Court of Common Pleas of Montgomery County
Orphans' Court at No(s): 2016-A054

BEFORE:  BENDER, P.J.E., LAZARUS, J., and FITZGERALD, J.[*]

MEMORANDUM BY BENDER, P.J.E.:                      **FILED MARCH 28, 2017**

A.L.H. ("Mother") appeals from the decrees entered September 6, 2016, that granted the petitions filed by the Montgomery County Office of

_____

[*] Former Justice specially assigned to the Superior Court.

Children and Youth ("OCY") to involuntarily terminate her parental rights to her minor children, L.C.M. (born in October of 2013), E.I.M. (born in January of 2012), and N.J.M. (born in August of 2010), (collectively "Children"), pursuant to sections 2511(a)(1), (2), (8), and (b) of the Adoption Act, 23 Pa.C.S. §§ 2101-2938. [1, 2] After careful review of the record and applicable law, we affirm.

At the conclusion of the termination hearing on September 1, 2016, the orphans' court set forth the following findings of fact:

> This family became known to [OCY] after absconding from Bucks County Office of Children & Youth supervision related to the abuse of daughter, L.[C.]M.
>
> [Mother] and her three [C]hildren lived with her paramour in Montgomery County when son[,] [E.I.M.,] endured traumatic injuries that required his hospitalization for approximately three months. During the criminal investigation that resulted from this incident, [Mother] was uncooperative, ultimately pleading guilty to criminal charges of endangering the welfare of [C]hildren, and lying to authorities or unsworn falsification, as well as serving approximately one year in custody at the Montgomery County Correctional Facility.
>
> [OCY] involvement started upon the hospitalization of the son[,] E[.I.]M. The relationship between birth parents and OCY is characterized as evasive by [Father] and combative by [Mother].

---

[1] The orphans' court issued the decrees on September 1, 2016 at case numbers 3071, 3072, and 3073 EDA 2016; however, the decrees were not entered on the docket until September 6, 2016.

[2] The parental rights of the Children's father, J.C.M. ("Father"), were terminated by separate decrees entered on the same date. Father has filed separate appeals. *See* Docket Nos. 3142, 3144, and 3147 EDA 2016.

…

   During much of this time period at issue here[,] [Mother] has been incarcerated. It is extremely difficult for this [c]ourt to consider [Mother] as a credible witness, especially regarding her statement that she wants the best for her [C]hildren. In addition to the crimen falsi of her conviction for unsworn falsification, [M]other's attitude through her testimony that only she knows what is best for her [C]hildren illustrates that she lacks the maturity and the will to see the bigger picture. We are here today as a result of her actions regarding her [C]hildren thus far.

N.T. Hearing, 9/1/16, at 167-169.

On February 23, 2016, OCY filed petitions for the involuntary termination of Mother's parental rights regarding each of her three Children. After hearing testimony from OCY and Mother at the termination hearing on September 1, 2016, the orphans' court issued final decrees, terminating Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (8), and (b).

On September 16, 2016, Mother filed timely notices of appeal in each of the three underlying matters,[3] along with timely Pa.R.A.P. 1925(b) concise statements of errors complained of on appeal. In her brief, Mother presents the following issue for our review: "Whether the trial court committed an error of law and/or abuse of discretion when it held that [OCY] had proven by 'clear and convincing evidence' that [Mother's] parental rights

_____

[3] The appeals at 3071, 3072 and 3073 EDA 2016 were consolidated *sua sponte* by *per curiam* order of this Court, as all of these matters involve related parties and issues. Order, 10/24/16.

should be terminated pursuant to 23 Pa.C.S. § 2511(a)(1), (2), and (8)?"

Mother's Brief at 4.

We review an appeal from the termination of parental rights under the following standard:

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. *In re: R.J.T.*, 608 Pa. 9, 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. *Id.*; *R.I.S.*, 36 A.3d [567,] 572 [(Pa. 2011) (plurality opinion)]. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. *Id.*; *see also Samuel Bassett v. Kia Motors America, Inc.*, 613 Pa. 371[, 455], 34 A.3d 1, 51 (Pa. 2011); *Christianson v. Ely*, 575 Pa. 647, [654-655,] 838 A.2d 630, 634 (Pa. 2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. *Id.*

> As we discussed in *R.J.T.*, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. *R.J.T.*, 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. *In re Adoption of Atencio*, 539 Pa. 161, [165,] 650 A.2d 1064, 1066 (Pa. 1994).

*In re Adoption of S.P.*, 47 A.3d 817, 826-27 (Pa. 2012).

In termination cases, the burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *In re S.H.*, 879 A.2d 802, 806 (Pa. Super. 2005). We have previously stated:

> The standard of clear and convincing evidence is defined as testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.

*In re J.L.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003) (internal quotation marks omitted).

Termination of parental rights is governed by section 2511 of the Adoption Act, which requires a bifurcated analysis.

> Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interest of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citing 23 Pa.C.S. § 2511; other citations omitted).

This Court must agree with only one subsection of 2511(a), in addition to section 2511(b), in order to affirm the termination of parental rights. *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Herein, we review the decree pursuant to section 2511(a)(2) and (b), which provide as follows:

> **(a) General Rule.—**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> …
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> …
>
> **(b) Other considerations.—**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(2) and (b).

We first address whether the trial court abused its discretion by terminating Mother's parental rights pursuant to Section 2511(a)(2).

> In order to terminate parental rights pursuant to 23 Pa.C.S. § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2)

such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003) (citation omitted). "The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002) (citations omitted).

Instantly, OCY asserted that Mother suffers from an incapacity to parent her Children, due to her failure to acknowledge the unexplained injuries suffered by two of her children and the fact that she lacks stability and has failed to maintain a significant parental relationship with the Children that would meet their emotional needs. *See* OCY's Brief at 20. OCY further argues:

Mother has a criminal conviction of endangering the welfare of a child related to the incident that brought E.I.M. and his siblings to OCY's attention in January of 2015. She has failed to discuss her role in this incident and she has failed to understand E.I.M.'s extensive injuries and resulting special needs. Mother's history of involvement with OCY in two counties for unexplained injuries to her very young children, and her failure to acknowledge her role in these injuries, renders her incapable of safely caring for the [Children] and resuming full-time care of them.

*Id.* (citations to the record omitted).

Moreover, our Supreme Court addressed, in **S.P.**, the relevance of incarceration in termination decisions under section 2511(a)(2). The **S.P.** Court held that:

Incarceration is a factor, and indeed can be a determinative factor, in a court's conclusion that grounds for termination exist under § 2511(a)(2) where the repeated and continued incapacity of a parent due to incarceration has caused the child to be without essential parental care, control or subsistence and that the causes of the incapacity cannot or will not be remedied.

**S.P.**, 47 A.3d at 828.

Here, the orphans' court found Mother's incarceration a relevant factor, as she was in custody during much of the time frame at issue. The court went on to elaborate that:

As the [**S.P.**] Court definitively ruled …, [the lower court] may consider the effect of a parent's incarceration in addressing the evidence offered to support a petition to terminate parental rights. This [c]ourt must also consider whether even when not incarcerated the parents have provided or have failed to provide the children with essential parental care, control or subsistence necessary for their physical or mental well-being. Parents are required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities…. A parent's vow to cooperate after a long period of uncooperativeness regarding the necessity or availability of services may properly be rejected as untimely or disingenuous, thus, a trial court may properly refuse to consider a parent's indication that he or she wishes an opportunity to improve their parenting in the future.

N.T. Hearing at 171 (citations omitted).

Here, Mother avers that she was not offered visitation with her Children while incarcerated, but that she did complete a parenting class. Mother further states that E.I.M. was harmed by a negligent act of not

taking him for care sooner and promises "that would never happen again." Mother's Brief at 8. However, the orphans' court rejected Mother's promise and stated: "Based on [Mother's] lack of credibility, her combativeness with efforts from the staff of OCY, and the failure to comply with many of their Family Service Plan requirements leads this [c]ourt to that rejection." N.T. Hearing at 172. Moreover, the court noted that, "completing the parenting course while in custody is admirable, but [the court] didn't hear from [her] testimony on the stand a willingness to do more." *Id.* Mother's perceived lack of interest in pursuing parenting courses led the court to seriously question Mother's assertion that she wants what is best for her Children. *Id.*

As OCY points out in its brief, Mother's incarceration was not the sole, nor greatest, factor in the court's determination to terminate Mother's parental rights under section 2511(a)(2). Contrary to Mother's assertion that she was "doing well before incarceration and after," *see* Mother's Brief at 6, OCY argues that Mother's incapacity was apparent both pre-incarceration and post-incarceration. In support of its argument, OCY provides:

> Mother has [] suffered from chronic housing instability that prevents her from providing the Children with the structure and stability that they need. Mother's inability to maintain stable housing arose even before she was incarcerated. Since her release, Mother has not obtained appropriate housing to which the Children could return. At the time of [the] termination of parental rights hearing, Mother could not provide her address to OCY or the [c]ourt, and she had no firm plan of where she would live with the Children. Her future was still unknown. Mother's chronic inability to maintain stable housing renders her incapable

of caring for [her Children]. Mother also had no income or form of stable employment to assist her in caring for the Children.

Mother has not demonstrated an ability to meet the emotional needs of the Children, as she has failed to maintain a significant relationship or demonstrated the ability to meet their needs during supervised visitation. Even when they did have contact over one year ago, the Children were never sad or disappointed when it was time to say good-bye to her. The quality of the visits themselves were poor, as Mother lacked the ability to properly care for three children, was consistently on her phone, and was unable to set age appropriate limits, and had inappropriate interactions with the Children. Mother has thus demonstrated an incapacity to meet the Children's emotional needs, by essentially disappearing from their lives and not providing them the attention, love and care they require from a parent.

OCY's Brief at 20-21.

Based on the foregoing, the orphans' court held that OCY met its burden under section 2511(a)(2) by clear and convincing evidence. N.T. Hearing at 175. After careful review, we conclude that the court's determinations are well supported by the record.

After we determine that the requirements of section 2511(a) are satisfied, we proceed to reviewing whether the requirements of subsection (b) are met. *See In re Adoption of C.L.G.*, 956 A.2d 999, 1009 (Pa. Super. 2008) (*en banc*). This Court has stated that the focus in terminating parental rights under section 2511(a) is on the parent, but it is on the child pursuant to section 2511(b). *Id.* at 1008.

In reviewing the evidence in support of termination under section 2511(b), our Supreme Court recently stated as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "intangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012). In *In re E.M.*, [620 A.2d 481, 485 (Pa. 1992)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013).

Mother avers that she maintained contact with her children up until her visitations were cut off at the time of incarceration and argues that she is bonded with her children. *See* Mother's Brief at 9. However, in support of its conclusion that termination of Mother's parental rights is in the best interests of the Children, the orphans' court expressly stated:

> [T]he testimony clearly established that although there is affection and each parent cares for the [C]hildren, the birth parents have not maintained sufficient and consistent contact and there is minimal parental bond between the [C]hildren and either birth parent.

> I find that the parental bond between [Mother] and the two sons exists, however, this [c]ourt finds that the two sons would suffer no detrimental harm by terminating the parental rights. I find that there is no bond between [Mother] and [L.C.M].

N.T. Hearing at 177-178.

"Courts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with

- 11 -

their foster parents." ***In re T.S.M.***, 71 A.3d 251, 268 (Pa. 2013). In this case, OCY reports,

> all three Children are placed in pre-adoptive homes where all of their needs are met. N.J.M. and L.C.M. know their foster parents as [their] mom and dad and she [*sic*] calls them "mommy" and "daddy," they both interact with the siblings in the foster home as if they are their biological siblings. E.I.M.'s foster parent is able to provide for his long-term needs, given his extensive special needs.

OCY's Brief at 28.

Based on the testimony and evidence produced at the termination hearing, the orphans' court concluded:

> [T]hese birth parents have not provided a home, have not met their children's needs, and have not maintained a consistent and strong parent-child relationship. The parent[s'] desire, namely [Mother's] desire, to start over at this time is insufficient to meet the [C]hildren's needs for a consistent and reliable love, affection and responsibility. I conclude that the emotional needs and welfare of the [C]hildren can best be met by terminating the parental rights of both birth parents and that the [C]hildren will not suffer a detriment as a result of termination of the parental rights of birth parents.

> Therefore, I find from the evidence and testimony that termination of … [Mother's] rights best serves the needs and welfare of each of the [C]hildren, and termination of the parental rights of [Mother] … will not irreparably harm any of the [C]hildren.

N.T. Hearing at 178.

As there is competent evidence in the record that supports the orphans' court credibility and weight assessments regarding the Children's needs and welfare, and the absence of any bond with Mother, we conclude that the court did not abuse its discretion as to section 2511(b). ***See S.P.***,

47 A.3d at 826-27. Accordingly, we affirm the order terminating Mother's parental rights to the Children.

Order affirmed.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/28/2017